UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Petitioner, <br><br> V. <br><br> WAL-MART STORES EAST, LP, <br><br> Respondent. | CIVIL ACTION NO. 6:14-cv-228-KKC <br><br><br> MEMORANDUM <br> OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Equal Employment Opportunity Commission's ("EEOC" or "Commission") Petition for an Order to Show Cause Why Subpoena No. IN-14-45S ("Subpoena") Should Not Be Enforced. (DE 1). For reasons set forth below, the Court will deny the EEOC's petition.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 4, 2010, the EEOC received a Charge of Discrimination alleging, in relevant part, that Respondent Wal-Mart Stores East, LP's ("Walmart") pre-employment Physical Abilities Test ("PAT") has a disparate impact on women as a class. (DE 1-3.) In the course of investigating this claim, the Commission requested data relating to Walmart's administration of the PAT at all 40 of Walmart's Grocery Distribution Centers. (DE 1-1 at 8.) Walmart produced the requested data for its Clarksville, Arkansas, and London, Kentucky, Distribution Centers, but declined to include Personally Identifiable Information ("PII") and objected to the scope of the requests on relevance and undue burden grounds. (DE 10 at 8.) On October 24, 2014, the Subpoena was issued to compel production of the remaining data. (DE 1-8.) The parties dispute whether Walmart received the Subpoena on

October 27, 2014—the date the attached green card was signed by Walmart's employee—or on October 28, 2014—the date Walmart's postal records indicate and the date they aver it was actually received. (DE 10 at 8–9.) Consequently, the Commission denied Walmart's November 4, 2014, Petition to Revoke as untimely on November 26, 2014. (DE 1-1 at 7.) The EEOC filed this action to enforce the Subpoena on December 8, 2014. (DE 1-1.)

This is not these parties first foray into the Eastern District of Kentucky's Courts. The charge that prompted this investigation was, in fact, made by a former member of a 2001 class action suit initiated by the EEOC in this Court. (DE 1-3; DE 10 at 3.) The 2001 action, alleging sex discrimination in Walmart's orderfiller hiring practices, was resolved before trial by Consent Decree in 2010. *E.E.O.C. v. Wal-Mart Stores, Inc.,* No. 01-339, (E.D. Ky. Mar. 1, 2010), DE 669 (hereinafter "Decree"). The Decree required training for Walmart's human resources employees to "avoid subjective biases." *Id.* at 4. Walmart's prior hiring practices for "orderfillers" were criticized by the EEOC for permitting such biases. (DE 10 at 3.) The Decree also established an "instatement" process, under which Walmart was required to fill certain positions with eligible female claimants who were previously denied employment. Decree at 6–7. Walmart subsequently implemented the PAT, which this Court approved as consistent with the Decree because it was applied to all orderfiller applicants. Opinion & Order, No. 01-339 (E.D. Ky. Jan. 6, 2011), DE 676. The Charging Party prompted this investigation after she was denied employment through the "instatement" process based on her PAT results. (DE 1-3.)

The Subpoena would compel production of applicant data from all of Walmart's 40 nationwide distribution centers, for any individual applying after January 1, 2010. (DE 1-8.) Specifically, the first five items direct turnover of data from five different tables, for all such applicants that took the PAT. (DE 1-8 at 3-5.) The sixth item instructs submission of

2

additional nationwide data to supplement the table Walmart previously turned over for its London, Kentucky, distribution center. (DE 1-8 at 6.) Finally, the seventh item would require production of PII—Social Security Number, Name, Address, and Phone Number—for all nationwide distribution center applicants[1] since January 1, 2010, along with a corresponding "UNIQUE_ID" that would link the PII to the other data tables. (DE 1-8 at 6.)

Walmart represents that such productions would require sifting through an "estimated 1.0-1.2 million" applicants in order to "manually align" this data for the "estimated 44,000-45,000" times it administered the PAT. (DE 10 at 29.) Walmart, extrapolating from its earlier more limited production, estimates the costs of compliance at $105,000 and 2,000 person hours. (DE 10 at 29.) The EEOC claims that the Subpoena is well within its broad investigatory authority, which it exercises here "to determine whether the [PAT] administered by [Walmart] has a disparate impact on females." (DE 1-1 at 10.) However, Walmart concedes "that the PAT, like most physical strength tests, adversely affects women as a group." (DE 10 at 20.) The Commission alternatively argues that the Subpoena is vital to its mandatory conciliation efforts. (DE 11 at 3.)

The standards governing this Court's analysis of administrative subpoenas compel the conclusion that this Subpoena is unenforceable. The principles and circumstances to be discussed demonstrate that the productions required by this Subpoena, though relevant, would be unduly burdensome.

This Court's analysis will proceed by determining (1) whether Walmart's alleged failure to file a timely Petition to Revoke waived its objections; (2) if the Commission's resort to this Court before addressing Walmart's purportedly untimely Petition violated

---

[1] This Court notes that the EEOC has consented to limiting this item to order filler applicants. (DE 11 at 7 n.10.)

3

EEOC procedure; and (3) how this Circuit's enforcement standard applies to the facts of this case.

## II. ANALYSIS

### A. TIMELINESS AND WAIVER

Both parties expended significant effort disputing the timeliness of Walmart's objections under EEOC regulations. These guidelines require petitions challenging EEOC subpoenas to "be mailed to the [EEOC] within five days . . . after service of the subpoena." 29 C.F.R. § 1601.16(b)(1). However, for the reasons set forth below, this Court need not decide this issue before reaching the merits of Walmart's objections.

The EEOC alleges that failure to comply with its timeliness regulations "prevents the party from challenging the subpoena, except on constitutional grounds." (DE 1-1 at 7.) Yet, the EEOC cites no controlling authority to support this proposition. Walmart attempts to rebut this argument on two grounds: (1) that timely objection is not a prerequisite to this Court's exercising jurisdiction to hear its objections (DE 10 at 12); and (2) under the circumstances Walmart was not required to exhaust its administrative remedies to avoid waiving objections before this Court. (DE 10 at 15–17.) The EEOC does not appear to dispute the former (DE 11 at 5) and this Court is persuaded to agree with the latter.

Both parties cite to the D.C. Circuit's decision in *E.E.O.C. v. Lutheran Social Servs.*, 186 F.3d 959 (D.C. Cir. 1999), which provides a well-reasoned analysis for courts evaluating the impact of timeliness when reviewing objections. (DE 10 at 14; DE 11 at 5.) Relevant to Walmart's jurisdictional argument, the *Lutheran* Court held that 1601.16(b)(1) presents "no categorical bar" to a court's "excus[ing] non-compliance." *See Lutheran*, 186 F.3d at 964. Because Congress did not explicitly require exhaustion under these circumstances, this Court has discretion to decide whether Walmart waived its objections by, allegedly, failing

4

to exhaust its administrative remedies. *Id.* at 963–64 (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)).

The D.C. Circuit also stated that "section 1601.16(b)(1)'s mandatory language creates a strong presumption that issues parties *fail to present to the agency* will not be heard in court." *Id.* at 964 (emphasis added) (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). Nonetheless, Court's should consider "whether the facts and circumstances surrounding [such non-compliance are] sufficiently extraordinary" to excuse non-compliance. *Id.* at 964. Here, it is unclear whether the EEOC is even entitled to a presumption of waiver because Walmart raised its objections nearly a month (DE 10-5) before the subpoena was issued. *See S. Ohio Coal Co. v. Sec'y of Labor*, 781 F.2d 57, 58 (6th Cir. 1986) (noting that "the specific challenge presented by plaintiffs . . . has heretofore been addressed to the Secretary"). Several other factors support denying waiver here including: (1) the actuality of a procedural deficiency is strongly disputed; (2) Walmart's "extraordinary" postal circumstances (DE 10 at 11) lend credence to that dispute;[2] (3) the dispute over delivery of the subpoena is only relevant because the alleged deficiency was a single day; and (4) unlike the *Lutheran* respondents—though their default was also excused—Walmart attempted to comply with the EEOC requirements. *See Lutheran*, 186 F.3d at 961; *see also SEC v. WACO Financial, Inc.*, 751 F.2d 831, 833–34 (6th Cir. 1985) (declining to address a collateral due process attack to an SEC action when the SEC had no "opportunity to correct any deficiencies . . . before issuing its final order").

The Court is not persuaded by the EEOC's attempt to distinguish *Lutheran* based on the differing objections asserted. (DE 11 at 5.) Though the *Lutheran* Court stated that the

---

[2] Walmart should note that although this Court may be excusing waiver under these circumstances, its postal issues do not provide them blanket immunity to the consequences of missed deadlines. A corporation as developed and successful as Walmart should be able to implement a system that prevents even the possibility of premature green card signings.

5

case was "quite different from the more typical situation where a subpoena recipient's objections rest on relevance." *Lutheran*, 186 F.3d at 965. That distinction was made in dictum after the court had already declined waiver, and it was based on the deference due to the EEOC's determination of relevance. *See id.* The merits of Walmart's relevance objection can be entertained while still according the EEOC's position appropriate deference. *But see E.E.O.C. v. U.S. Fid. & Guar. Co.*, 414 F. Supp. 227, 232 (D. Md. 1976) ("The Court does not study the record and determine whether the . . . Commission acted properly in refusing to quash a subpoena[; a] subpoena enforcement proceeding is a de novo proceeding before this Court."). And, as the EEOC admits (DE 1-1 at 9), it would have to establish relevance before this Court would enforce its subpoena, regardless of Walmart's objections. The EEOC's relevance showing will receive no less deference simply because it is challenged. Thus, Walmart's raising a relevancy objection does not, *ipso facto*, bar excusing its alleged procedural deficiency. *See also Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982) (stating that the undue burden inquiry prior to judicial enforcement of an administrative subpoena "finds its genesis in the Fourth Amendment").

**B. VALIDITY OF EEOC'S PROCEDURE**

Walmart represents that if its petition was timely the EEOC would not be properly before this Court because Commission regulations require a final determination denying that petition before seeking enforcement. (DE 10 at 17–18.) However, this Court does not hold that Walmart's petition was timely. As the EEOC points out, it is also entitled to seek enforcement under section 1601.16 if it determines no timely Petition to Revoke was filed. (DE 11 at 2 n.3.) Furthermore, it would be entirely inequitable to accept Walmart's argument that its own alleged procedural deficiency does not bar jurisdiction, while also holding that the EEOC's alleged defect bars jurisdiction.

6

In sum, neither party has definitively established that the other is guilty of a procedural default. Even if they had, neither of the alleged defaults would extinguish this Court's jurisdiction. Both Walmart and the EEOC have submitted voluminous filings addressing the substance of Walmart's objections. So, neither party will be denied a meaningful opportunity to present its position by this Court's excusal of the alleged procedural deviations. Under the circumstances, this Court finds ample justification for exercising its discretion to proceed to the merits.

## C. ENFORCEMENT STANDARD

For this Court to enforce the EEOC's subpoena it must show that the Subpoena: "(1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC." *E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994) (citing *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191 (1990)). If the EEOC can satisfy this standard Walmart can still limit or prevent enforcement if it can establish that the subpoena is "unduly burdensome." *Id.* at 47.

Walmart's remaining objections include: (1) that large portions of the data requested in the Subpoena are irrelevant to the Commission's current investigation; (2) that producing the requested data would be unduly burdensome; and (3) that state and Federal privacy laws remove EEOC authority to request certain personally identifiable information ("PII"). Though the Subpoena seeks relevant information, this Court is persuaded by Walmart's second objection and, thus, will not address its third.

## D. RELEVANCE, AUTHORITY, AND UNDUE BURDEN

"Congress intended for [the EEOC] to have broad access to information relevant to inquiries it is mandated to conduct." *Ford Motor Credit Co.*, 26 F.3d at 47. However, this Court will not simply accept the EEOC's determination of relevance. *Id.* Congress provided

7

the EEOC a right of access to evidence that "relates to unlawful employment practices . . . and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). The Eleventh Circuit has stated that the EEOC must establish "relevance to the contested issues that must be decided to resolve" the charge under investigation. *E.E.O.C. v. Royal Caribbean Cruises. Ltd.*, 771 F.3d 757, 761 (11th Cir. 2014). Here, the EEOC is investigating a Charge of sex discrimination resulting from the PAT's "disproportionate adverse impact on women as a class." (DE 1-3; DE 11 at 6.) With this disparate impact claim in mind, "this court's task is to weigh the likely relevance of the requested material to the investigation against the burden to [Walmart] of producing the material." *Ford Motor Credit Co.*, 26 F.3d at 47. In this sense, the undue burden and relevance inquiries overlap.

42 U.S.C. § 2000e–2(k) establishes the "[b]urden of proof in disparate impact cases." To establish that Walmart's use of the PAT as a screening tool is a *prima facie* unlawful employment practice, the EEOC must demonstrate that the PAT has a disparate impact on women. 42 U.S.C. § 2000e–2(k)(1)(A)(i). Walmart has conceded that the PAT has a disparate impact on women. (DE 10 at 20.) For the EEOC to obtain a favorable judgment, however, Walmart would also have to fail in demonstrating that the PAT "is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). This Court cannot hold that the information the EEOC seeks is, strictly, irrelevant. The nationwide PAT data would tend to show whether or not the PAT does, in fact, have a disparate impact.

The EEOC claims that the nationwide PAT data is "critical" to the completion of its investigation and "necessary for gender identification, witness interviews, as well as the EEOC conciliation process." Clearly the EEOC has recognized that although "necessity" is not considered for purposes of traditional evidentiary "relevance," the relative importance of

8

the information sought is an important factor for this Court's consideration. *See* Fed. R. Evid. 401 (advisory committee notes stating that exclusion for irrelevance should not be based on lack of dispute over "[t]he fact to which the evidence is directed"). As noted above, the Eleventh Circuit directly integrated a need element into its modified approach to relevance. *Royal Caribbean Cruises. Ltd.*, 771 F.3d at 761 ("relevance that is necessary to support a subpoena . . . is relevance to the *contested* issues that must be decided to resolve that charge" (emphasis added)). Another method for incorporating a necessity component can be found in the Advisory Committee's notes to Rule 401 of the Federal Rules of Evidence. There it is advised that rulings excluding "evidence offered to prove a point conceded by the opponent . . . should be [based on] such considerations as waste of time and undue prejudice." Fed. R. Evid. 401. This logic readily dovetails with this Court's consideration of whether the burden of producing these documents would be "undue." *See also Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1270 (7th Cir. 1982) ("Whereas significant need might justify imposition of a very substantial burden, the same cannot easily be said where the information requested, although generally relevant . . . , is wholly unlikely to resolve the . . . dispute.").

Because Walmart has conceded the PAT's disparate impact on females, requiring production of documents to prove that fact would place an "excessive" and "unwarranted" burden on Walmart. *Undue*, BLACK'S LAW DICTIONARY (7th ed. 1999); *see also Undue*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/undue (defined as "more than is reasonable or necessary"). The enforcement provisions of Title VII make clear that the goal of an EEOC investigation is to determine whether there exists "reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e–5. Walmart has conceded as much regarding the Charge's disparate impact allegations. Thus, not only does this subpoena

seek more than is reasonable or necessary, but it is also seemingly inconsistent with the legislation authorizing EEOC investigations. Utilizing the subpoena powers authorized thereunder beyond the purposes for which they were granted would be difficult to characterize otherwise.

Furthermore, incorporating Walmart's concession of an issue into this Court's analysis does not "place a potent weapon in the hands of employers who have no interest in complying voluntarily with the Act, who wish instead to delay as long as possible investigations by the EEOC." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 81 (1984). Walmart has exhibited a desire not to drag out this investigation, but to expedite its conclusion. (DE 10-7 at 2 ("the Commission has been investigating the Charges for four years . . . [w]e request that the Commission issue its determination on the Charges without further delay").) Conceding half of the EEOC's *prima facie* case for the charge under investigation is entirely consistent with such a desire. Walmart's concession should accelerate the investigation by allowing the Commission to focus on "the only remaining disputed issue . . . whether Walmart has met its burden of demonstrating business necessity and job-relatedness." (DE 10 at 23.)

Other than the EEOC's bald assertion that the nationwide PAT data is "critical" to completing its *investigation*, the Commission does little to rebut Walmart's claim that this data is only relevant to an uncontested issue. The Commission's reply asserts that determining the magnitude of the PAT's disparate impact is vital to *conciliation* of this claim. However, Title VII makes clear that "investigation" and "conciliation" are two distinct procedures. 42 U.S.C. § 2000e-5(b) ("If the Commission determines *after* such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by

10

. . . conciliation." (emphasis added)). The Commission's right of access is limited to evidence "relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a) (access authorized under the heading "Investigations"). In sum, the EEOC's subpoena power does not attach to its conciliation efforts and even if it did, such a subpoena would be premature before a determination "that there is reasonable cause to believe that the charge is true." *See* 42 U.S.C. § 2000e-5(b). This Court will not enforce a subpoena not grounded in the authority Congress granted the EEOC.

Under the circumstances, this Court is not convinced that even a minimal burden would not be "undue." However, that question need not be decided because Walmart has shown that producing the subpoenaed evidence would be significantly burdensome. (DE 10 at 28–30.) Walmart's Global Selection & Assessment Strategy Manager has attested that through his extensive involvement in monitoring the PAT data and processes, and based on prior data production pursuant to EEOC requests, he estimates "that assembling the data requested in [the] EEOC Subpoena . . . would cost Walmart at least $105,000 and would require the expenditure of potentially 2,000 person hours." (DE 10-11 Aff. of Nicholas C. Koenig Ph.D.) The EEOC disputes the validity of Walmart's burden on three grounds: (1) that Walmart's prior representations indicate that Dr. Koenig's estimate overstates Walmart's costs of production; (2) if Walmart's burden results from its own decision to use a complex system, those costs cannot be the basis for denying enforcement; and (3) that Walmart's estimated costs in comparison to its operating income do not establish an undue burden. (DE 11 at 10–11.)

The Commission claims that Walmart's stating—in connection with two earlier data productions—that "the data was produced in accordance with how" Walmart maintained it and that "[t]he data was not verified prior to production" belie Dr. Koenig's claim that those

productions required at least 50 person hours at a minimum cost of $3,000. (DE 11 at 10; DE 10-11 at 2.) However, these two documents, viewed in their entirety, are entirely consistent. Walmart's May 20, 2015, correspondence also states that the data came from multiple databases, that "Walmart does not have a system that connects those independent sources of data, and that the data was produced "in the manner requested" by the EEOC. (DE 11-4 at 1.) Dr. Koenig's affidavit merely elaborates on the "mapping" process that was required to incorporate the data from third party databases into Walmart's data, as it maintained it, while ensuring that the compiled data satisfied the EEOC's requests. In short, Walmart's prior correspondence gives this Court no reason to doubt the veracity of Dr. Koenig's sworn statement.

The Commission relies on a Fourth Circuit decision as supporting that "Wal-Mart itself made the decision to use such a complicated personnel system and cannot shield itself from agency review on grounds of 'undue burden'." (DE 11 at 10 (citing *E.E.O.C. v. Randstad*, 685 F.3d 433, 440 (4th Cir. 2012)). Nothing in the *Randstad* Court's analysis supports the EEOC's attempt to graft a blanket ban for costs associated with the complexity of an employer's systems onto the undue burden analysis. *See Randstad*, 685 F.3d at 452 (finding no undue burden when employer offered no evidence of normal operating costs and made no claim that production would threaten or disrupt its business operations). The *Ranstad* Court simply applied the Fourth Circuit's test for undue burden:

> Randstad is entitled to attempt to show that compliance with the subpoena would be "unduly burdensome." *Maryland Cup*, 785 F.2d at 477. "The burden of proving that an administrative subpoena is unduly burdensome is not easily met." *Id.* "The party subject to the subpoena must show that producing the documents would seriously disrupt its normal business operations." *Id.* Although "[w]hat is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question," *United Air*

12

> *Lines*, 287 F.3d at 653, an important factor is the cost of production "in the light of the company's normal operating costs." *Maryland Cup*, 785 F.2d at 479

*Id.* at 451.

*Ranstad* is not only unsupportive of the Commission's complexity assertion, but the case also contradicts their claim that Walmart's success as a company denies it the possibility of proving that productions costs of $105,000 and 2000 man hours are unduly burdensome. *See Id.* Despite the EEOC's attempt to establish a "hard and fast rule," the Fourth Circuit makes clear that undue burden is a fact intensive inquiry that must be determined case-by-case. *Id.* Here, the relevant facts show that (1) Walmart was charged with utilizing an employment practice with an impermissible disparate impact on women (DE 1-3); (2) in the course of investigating that charge the EEOC subpoenaed nationwide data on the allegedly discriminatory PAT (DE 1-1 at 6–7); (3) the requested data is relevant to determining whether the PAT has a disparate impact on women; (4) Walmart has conceded that the PAT has a disparate impact on women (DE 10 at 20); (5) for Walmart to satisfy this, now entirely unnecessary, subpoena it would need to spend an estimated $105,000 and utilize around 2000 man hours; (6) a Ph.D., familiar with the steps required for Walmart employees to comply with this subpoena, has sworn that compliance with a significantly less burdensome data request disrupted normal business operations because Walmart's employees could not perform their usual job duties (DE 10-11 at 2–3). These circumstances dictate this Court's holding that enforcement of this subpoena would be unduly burdensome.

### III. CONCLUSION

This Court is satisfied that Walmart would be unduly burdened by enforcement of this subpoena. Consequently, there is no need to address Walmart's alternative argument

that the subpoena's request for PII is outside the EEOC's authority. Nor will this Court attempt to decide for the EEOC whether "Walmart has produced sufficient information from which the Commission can conclude that the PAT is an appropriate selection tool." (DE 10 at 19.) Congress empowered the EEOC to investigate whether reasonable grounds support a charge, not this Court. This opinion does not address the job relatedness and business necessity elements of a *prima facie* disparate impact claim because the Commission does not seek to justify enforcement by reference to those elements. This Court narrowly holds that when, as here, a subpoena directs onerous production of evidence only relevant to an undisputed element of a disparate impact claim, such production would be unduly burdensome.

Accordingly, **IT IS ORDERED** that the EEOC's Petition for an Order to Show Cause Why Subpoena No. IN-14-45S Should Not Be Enforced (DE 1) is **DENIED**.

Dated March 29, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY